

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 15 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 15, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 89134-6 |
| Respondent, | En Banc |
| v. | Filed May 15, 2014 |
| EDWARD MARK OLSEN, | |
| Petitioner. | |

J.M. JOHNSON, J.*— In this case, we consider Washington's treatment of foreign convictions for sentencing purposes in light of the recent United States Supreme Court case *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). Petitioner Edward Olsen was convicted of a number of crimes, including attempted second degree murder, for an incident of domestic violence against the mother of his children. His offender score at

---

* Justice James M. Johnson is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

sentencing was six and he received an exceptional sentence of 360 months. Olsen claims that a foreign conviction for terrorist threats was not comparable to Washington's felony harassment and should not have been included in his offender score. The Court of Appeals, Division Two, affirmed Olsen's convictions and sentence. We affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

This case arose out of an incident of domestic violence perpetrated by petitioner Olsen against the mother of his children, Bonnie Devenny. Olsen broke into Devenny's house, poured gasoline on her while she was sleeping, and told her that she was going to die. Police later recovered a lighter near the bed. Olsen has a history of threatening and committing acts of domestic violence against Devenny, including a California conviction for terrorist threats for which he pleaded no contest. During the California incident, Olsen allegedly wrapped duct tape around Devenny's legs and told her that he was going to kill her, cut her up into little pieces, and put the pieces in a plastic storage container.

For the gasoline incident, Olsen was charged in Kitsap County Superior Court by second amended information of attempted first degree murder, attempted second degree murder, first degree burglary, felony harassment,

and third degree malicious mischief. All felony counts included domestic violence aggravators for the purposes of RCW 9.94A.535 because the crime occurred in the presence of Devenny and Olsen's 12-year-old son. A jury convicted Olsen as charged on all counts except attempted first degree murder. Olsen was sentenced using an offender score of six, in part because his California conviction for terrorist threats was found to be comparable to Washington's felony harassment. The trial court imposed an exceptional sentence of 360 months.

Olsen appealed to Division Two of the Court of Appeals, which affirmed his convictions and sentence. *State v. Olsen*, 175 Wn. App. 269, 309 P.3d 518 (2013). The Court of Appeals opinion was issued on June 27, 2013, one week after *Descamps* was issued by the United States Supreme Court. The Court of Appeals opinion did not address *Descamps*. Olsen filed a petition for review in this court. We granted review only on the issue of comparability of the California conviction, including the propriety of examining the facts of the foreign conviction in light of *Descamps*. *State v. Olsen*, 178 Wn.2d 1018, 312 P.3d 651 (2013). We affirm the Court of Appeals.

3

ANALYSIS

We review the trial court's calculation of a defendant's offender score de novo. *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007) (citing *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003)). We also review de novo claims that the petitioner's sentence violates his right to a jury trial under the Sixth Amendment to the United States Constitution. *State v. Mutch*, 171 Wn.2d 646, 656, 254 P.3d 803 (2011) (citing *State v. Alvarado*, 164 Wn.2d 556, 560-61, 563, 192 P.3d 345 (2008)).

A.    Washington's Comparability of Foreign Convictions under the Sentencing Reform Act (SRA)

The SRA creates a grid of standard sentencing ranges calculated according to the crime's seriousness level and the defendant's offender score. RCW 9.94A.505, .510, .520, .525; *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). The offender score is the sum of points accrued as a result of prior convictions. RCW 9.94A.525. Pursuant to RCW 9.94A.525(3), "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." The State bears the burden of proving the existence and comparability of all out-of-state convictions. *Ford*, 137 Wn.2d at 480.

We first stated Washington's two-part test for comparing foreign

convictions in *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998). Under the legal prong, courts compare the elements of the out-of-state conviction to the relevant Washington crime. If the foreign conviction is identical to or narrower than the Washington statute and thus contains all the most serious elements of the Washington statute, then the foreign conviction counts towards the offender score as if it were the Washington offense. *Id.* at 606. If, however, the foreign statute is broader than the Washington statute, the court moves on to the factual prong—determining whether the defendant's conduct would have violated the comparable Washington statute. *Id.* (citing *State v. Duke*, 77 Wn. App. 532, 535, 892 P.2d 120 (1995)).

In *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 256, 111 P.3d 837 (2005), we recognized that *Morley*'s factual analysis could prove problematic after *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In *Apprendi*, the United States Supreme Court held that except for a prior conviction, a "fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. We have consistently held that the existence of a prior conviction need not be presented to a jury and proved beyond a reasonable doubt. *Lavery*, 154 Wn.2d at 256 (citing

*State v. Smith*, 150 Wn.2d 135, 141-43, 75 P.3d 934 (2003)). In *Lavery*, we recognized that, as in the case of prior convictions, a certified copy of a prior judgment is highly reliable evidence when analyzing foreign crimes that are legally comparable to Washington crimes. *Id.* at 256-57. However, this is not the case for foreign crimes that are not legally comparable. "In essence, such crimes are *different* crimes." *Id.* at 257.

We concluded that "*Apprendi* does not apply where the State seeks to prove the existence of a prior conviction but does apply when a court must look to the facts underlying a foreign offense to determine its comparability." *State v. Thiefault*, 160 Wn.2d 409, 419, 158 P.3d 580 (2007) (citing *Lavery*, 154 Wn.2d at 256-57). Avoiding conflict with *Apprendi*, we narrowed *Morley*'s factual prong to consider only facts that were admitted, stipulated to, or proved beyond a reasonable doubt. *Lavery*, 154 Wn.2d at 258; *Thiefault*, 160 Wn.2d at 415. We held that Lavery's prior foreign robbery conviction was neither factually nor legally comparable to Washington's second degree robbery statute and thus could not count as a strike under the Persistent Offender Accountability Act of the SRA. *Lavery*, 154 Wn.2d at 258.

B.    *Descamps*

We granted review in this case to consider the comparability of the

California conviction, including the propriety of examining the facts of the foreign conviction in light of *Descamps*. We consider, in part, whether our current comparability analysis survives *Descamps*. We hold that it does.

On June 20, 2013, the United States Supreme Court issued its opinion in *Descamps*. In that case, the defendant was convicted in federal district court of possession of a firearm by a convicted felon. He was sentenced under the Armed Career Criminal Act of 1984 (ACCA),[1] which increases the sentences for some federal defendants who have three prior violent felony convictions. *Descamps*, 133 S. Ct. at 2281. To determine whether a past conviction qualifies, courts use the "categorical approach." *Id.* This involves comparing the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic crime," which is the offense as commonly understood. *Id.* To qualify as an ACCA predicate, the prior conviction's statutory elements must be the same as or narrower than those of the generic offense. *Id.*

In analyzing ACCA predicates, federal courts use the "modified categorical approach" when a prior conviction involves a divisible statute. Such statutes set out one or more elements of the offense in the alternative.

---

[1] 18 U.S.C. § 924(e).

*Id.* One example of a divisible statute is a burglary statute involving entry into a building *or* an automobile. *Id.* When one alternative matches an element of the generic offense but the other does not, sentencing courts may consult some documents,[2] including the indictment and jury instructions, to determine which alternative was the basis for the conviction. The court then applies the categorical approach by comparing the conviction crime elements with the generic crime elements. *Id.* If the elements of the defendant's prior conviction, as they are charged, are the same or narrower than the generic offense, the conviction can be used to impose an ACCA sentence.

The modified categorical approach is a necessary extension of the categorical approach. "Because the statute is 'divisible'—*i.e.*, comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of [the crime]." *Id.* at 2284.

---

[2] The United States Supreme Court in *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010), listed which documents can be reviewed in a modified categorical approach, including "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms."

In *Descamps*, the United States Supreme Court considered whether sentencing courts can consult outside documents when a defendant is convicted under an *indivisible* statute that is broader than the generic offense. *Id.* at 2283. This would involve courts looking to a case's underlying facts to determine if the defendant's conduct met the elements of the generic crime even if the charging statute was broader. The Court ultimately held that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Id.* at 2282. This means that unless a statute contains elements set out in the alternative, courts may not look to outside documents to determine the basis for the conviction. If a prior offense contains broader statutory elements than the generic offense, sentencing courts are forbidden from using the prior offense as the basis for an ACCA sentence, regardless of the underlying criminal conduct.

> The Court in *Descamps* recognized that fact inquiries
>
> would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns . . . counsel against allowing a sentencing court to "make a disputed" determination "about what the defendant and state judge must have understood as the factual basis of the prior plea," or what the jury in a prior trial must have accepted as the theory of the crime.

*Id.* at 2288 (quoting *Shepard v. United States*, 544 U.S. 13, 25, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (plurality opinion)). Under the Sixth Amendment, it is inappropriate to "extend[ ] judicial factfinding beyond the recognition of a prior conviction." *Id.*; *see also Apprendi*, 530 U.S. at 490.

*Descamps'* Sixth Amendment implications do not call into question Washington's comparability analysis under the SRA. A long line of cases supports the use of the categorical and modified categorical approaches for analyzing foreign convictions under the ACCA. *See Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) (approving of the modified categorical approach for divisible statutes); *Nijhawan v. Holder*, 557 U.S. 29, 41, 129 S. Ct. 2294, 174 L. Ed. 2d 22 (2009) (expressing approval of the modified categorical approach); *Shepard*, 544 U.S. at 13 (recognizing that the categorical approach applies to plea agreements); *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) (establishing the categorical and modified categorical approaches to the ACCA). This federal framework is consistent with the *Lavery* framework, which limits our consideration of facts that might have supported a prior conviction to only those facts that were clearly charged and then clearly proved beyond a reasonable doubt to a jury or admitted by the defendant.

The United States Supreme Court's consideration of Sixth Amendment rights does apply to state cases. *See Apprendi*, 530 U.S. at 476 (recognizing that the Fourteenth Amendment extends the Due Process Clause of the Fifth Amendment and notice and jury trial guaranties of the Sixth Amendment to proceedings in state courts). Our clarifications of the factual prong in *Lavery* and *Thiefault* guarantee that judicial determinations will not usurp the role of the jury in violation of the Sixth Amendment.

## C. The Trial Court's Determination of Olsen's Offender Score

Olsen claims that the California crime of terrorist threats is broader than the Washington crime of felony harassment and therefore was improperly used to calculate his offender score. CAL. PENAL CODE § 422(a) defined "terrorist threats"[3] as

> [a]ny person who willfully threatens to commit a crime which will result in death *or* great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or

---

[3] Olsen was charged with making "terrorist threats" under CAL. PENAL CODE § 422(a) (1998). The name of the crime has since been changed to "criminal threats" but the substance of the statute remains unchanged.

11

her own safety or for his or her immediate family's safety.

(Emphasis added.)

Pursuant to former RCW 9A.46.020 (1999):

(1) A person is guilty of harassment if:
    (a)    Without lawful authority, the person knowingly threatens:
        (i)    To cause bodily injury immediately or in the future to the person threatened or to any other person. . . .
    (b)    The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.
(2)    A person who harasses another is guilty of a gross misdemeanor . . . except that the person is guilty of a class C felony if . . . (b) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.

Under the legal prong of our two-part test, we first compare the elements of the out-of-state conviction to the relevant Washington crime. If the foreign conviction is identical to, or narrower than, the Washington statute, the foreign conviction counts towards the offender score as if it were the Washington offense. *Morley*, 134 Wn.2d at 606. Here, the two statutes are not legally comparable because the California statute criminalizes threats to commit a crime that will result in death or great bodily injury. *See* CAL. PENAL CODE § 422. Under the Washington statute, threats of great bodily injury generally do not constitute a felony. Former RCW 9A.46.020(2).

We, therefore, move on to the factual prong, under which we determine

whether the defendant's conduct would have violated the comparable Washington statute. *Morley*, 134 Wn.2d at 606. We may consider only facts that were admitted, stipulated to, or proved beyond a reasonable doubt. *Thiefault*, 160 Wn.2d at 415.

For his California conviction of terrorist threats, Olsen pleaded no contest to all counts. Under California law, the "'legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes.'" *People v. Wallace*, 33 Cal. 4th 738, 749, 93 P.3d 1037, 16 Cal. Rptr. 3d 96 (2004) (quoting CAL. PENAL CODE § 1016(3)). Moreover, "[a] guilty plea 'admits every element of the crime charged.'" *Id.* (quoting *People v. Thomas*, 41 Cal. 3d 837, 844 n.6, 718 P.2d 94, 226 Cal. Rptr. 107 (1986)). Under California law, even where the statutory elements are in the disjunctive, if the charging document presents them in the conjunctive, a guilty plea admits each of the elements. *People v. Tuggle*, 232 Cal. App. 3d 147, 154-55, 283 Cal. Rptr. 422 (1991), *overruled on other grounds by People v. Jenkins*, 10 Cal. 4th 234, 893 P.2d 1224, 40 Cal. Rptr. 2d 903 (1995).

Count I of the information alleges, in part, that Olsen "did willfully and unlawfully threaten to commit a crime which would result in death *and* great bodily injury to [Devenny]." Ex. 37 (emphasis added). Olsen, therefore,

admitted threatening to commit a crime that would result in *both* death *and* great bodily injury to Devenny.

Olsen further alleges that Cal. Penal Code § 422 lacks the element that the victim fears death, which former RCW 9A.46.020 requires. Suppl. Br. of Pet'r at 2. The California statute requires the threat to "convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety." CAL. PENAL CODE § 422(a). Because the statute is written in the disjunctive, the type of fear relates back to the type of threat—either of death or great bodily injury. Here, Olsen admitted to threatening both death and great bodily injury by implicitly admitting all elements of the crime through a no contest plea. *See Wallace*, 33 Cal. 4th at 749; *Tuggle*, 232 Cal. App. 3d at 154-55. Accordingly, the requirement that Devenny feared death is satisfied.

In performing the factual analysis as narrowed in *Lavery* and *Thiefault*, it is evident that Olsen's California conviction for terrorist threats under Cal. Penal Code § 422 is factually comparable to felony harassment under former RCW 9A.46.020. The trial court properly calculated Olsen's offender score using the foreign conviction.

Olsen claims that because the California conviction should not have been used in his offender score, a separate conviction for custodial interference washes out. He, therefore, contends that his offender score should be four instead of six. However, since the California conviction was properly included in his offender score, the custodial interference conviction does not wash out.

CONCLUSION

Because Olsen admitted facts surrounding his California conviction that would have satisfied Washington's felony harassment statute, the trial court properly included the foreign conviction in his offender score. Washington's comparability analysis of foreign convictions survives *Descamps*. We, therefore, affirm the Court of Appeals.

*[signature]* P.T.

WE CONCUR:

Madsen, C.J.

*[signature]*

*[signature]*

Fairhurst, J.

Stephens, J.

Wiggins, J.

González, J.

Gordon McCloud, J.