# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72428-2-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CLAYTON HARRISON RUSSELL, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: January 11, 2016 |

SPEARMAN, C.J. — Clayton Russell was accused of taking items from the carport and storage closet of a residence. A jury convicted him of second degree burglary. Russell appeals, asserting that the trial court violated his right to a unanimous verdict by failing to give a unanimity instruction. He further argues that the trial court erred in including prior California convictions in his offender score. Finding no error, we affirm.

## FACTS

Christian Bell and Kristin Kane owned a home with an attached carport. The house formed the back wall of the carport. Two storage closets were built into this wall and opened into the carport. The carport had a partial or "privacy" wall on the side facing the neighbor. Bell and Kane used the carport for parking and for storage. They kept computer equipment, Christmas supplies, and other personal items in the closets. They also stored the recycling and garbage bins in the closets.

Bell and Kane separated and they put the house up for sale. They rented a U-Haul truck to finish moving their belongings out of the house. After hauling the larger belongings, only a few personal items remained. These included: a box of photographs; a bin of toys; a black punching bag; a compound bow and arrow; a printer; and garden tools including a ladder, hedge trimmer, leaf blower, and extension cords. Bell and Kane decided to return the U-Haul and then load their remaining belongings in their cars. They stacked most of the items in the back corner of the carport and covered the stack with a towel. Bell put the bow and arrow in the left storage closet and closed the closet door. They left the punching bag on the porch by the front door.

While Bell and Kane were gone, their neighbor, Wilma Goodspeed, saw "a car that looked like a red Jeep" drive up Bell and Kane's driveway. Verbatim Report of Proceedings (VRP) at 104. The car backed down the driveway and turned around. It then backed up the driveway so that the back of the vehicle was partially inside the carport.

When Bell and Kane returned, the items they had left in the carport and front porch were gone. Kane talked to Goodspeed who told her about seeing the red car. Kane called the police. Bell drove around the neighborhood looking for a red car that fit the description provided by Goodspeed. In one front yard, Bell saw a child playing with a black punching bag. A man was sitting near the child and a red Geo Tracker was parked in the driveway. Bell pulled over and called the police.

Bell got out of his car and confronted the man, later identified as Russell. Russell admitted taking the items. He apologized and said he would return Bell's belongings. Russell brought something towards Bell's car, apparently to return the item to Bell, but Bell yelled at him not to touch his car. Russell then left in the red Geo.

Russell drove to the Bell-Kane house. When Kane saw the red Geo pull into the driveway, she confronted Russell. Russell apologized and returned the punching bag, the bin of toys, and some photos. He asked Kane not to call the police. When Kane told him that she already had, Russell left without returning further items.

Meanwhile, police officers responded to Bell's call and arrived at the house where Bell had met Russell. Bell gave the officer a description of Russell and his car. A police officer later found Russell's car parked at an intersection with the license plates removed. Some of the items taken from the Bell-Kane house were visible inside the car. When police officers located Russell, he told them that he had found the items in the driveway of the Bell-Kane home and he thought they were free for the taking.

Russell was charged with residential burglary. At trial, the court also instructed the jury on the inferior degree offense of burglary in the second degree and on the lesser included crimes of first and second degree criminal trespass. The court instructed the jury regarding the elements of the four crimes. As is relevant here, the jury was advised of the State's burden to prove beyond a reasonable doubt that the defendant unlawfully entered or remained in a

"dwelling" as to residential burglary and in a "building" as to second degree burglary. Clerk's Papers (CP) at 42. The court also instructed the jury on the definitions of these terms.

In closing argument, the State urged the jury to find that the carport and closet were part of a dwelling and Russell thus committed residential burglary. Alternatively, if the jury did not agree that he had entered a dwelling, the State urged the jury to find that Russell had entered a building and committed second degree burglary. Russell conceded that he took items from "this area in the driveway, carport, wherever," but argued that he did not intend to commit theft because he believed the items were abandoned. VRP at 296. Russell also argued that because the carport and storage closet were neither a "dwelling" nor a "building" at most he committed the crime of trespass. Id.

The jury convicted Russell of second degree burglary. At sentencing, the trial court found Russell's prior California convictions for first and second degree burglary to be factually comparable to Washington prior convictions and included them in Russell's offender score. Russell appeals.

## DISCUSSION

Russell argues that the trial court erred in failing to instruct the jury in unanimity as required in State v. Petrich, 101 Wn.2d 566, 571, 683 P.2d 173 (1984) overruled by State v. Kirkman, 159 Wn.2d 918, 155 P.3d 125 (2007). He asserts that removing items from the carport and from the storage closet are distinct acts, each of which could constitute the crime of burglary. Therefore, he

4

contends the failure to give a <u>Petrich</u> instruction requires reversal.[1] The State

counters that no <u>Petrich</u> instruction was required because the "continuing course

of conduct" exception applies. Br. of Respondent at 9. We agree with the State.

We review the adequacy of jury instructions de novo. <u>State v. Brown</u>, 159

Wn. App. 1, 14, 248 P.3d 518 (2010) (citing <u>State v. Pirtle</u>, 127 Wn.2d 628, 656,

904 P.2d 245 (1995)). Criminal defendants in Washington are entitled to a

unanimous jury verdict. <u>State v. Ortega-Martinez</u>, 124 Wn.2d 702, 707, 881 P.2d

231 (1994). When multiple acts could each constitute the crime charged, the

State must elect the specific criminal act on which it is relying for conviction.

<u>State v. Fiallo-Lopez</u>, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995) (citing <u>State</u>

<u>v. Kitchen</u>, 110 Wn.2d 403, 411, 756 P.2d 105 (1988)). If the State does not

make an election, the trial court must instruct the jurors that they must

unanimously agree that the same underlying criminal act was proven beyond a

reasonable doubt. <u>Id.</u>

However, no <u>Petrich</u> instruction is required if the acts were part of a

continuing course of conduct. <u>State v. Handran</u>, 113 Wn.2d 11, 17, 775 P.2d 453

(1989), <u>overruled on other grounds by</u> <u>Kitchen</u>, 110 Wn.2d 403. In determining

whether the acts formed a continuing course of conduct, "we evaluate the facts in

a commonsense manner, considering (1) the time separating the criminal acts

and (2) whether the criminal acts involved the same parties, location, and

---

[1] Russell also contends that the error in failing to give a <u>Petrich</u> instruction was not harmless because the carport does not fall within the statutory definition of "building." Brief of Appellant at 6-8. Because we conclude no <u>Petrich</u> instruction was necessary, we do not reach this argument.

ultimate purpose." Brown, 159 Wn. App. at 14 (citing State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996)). Generally, criminal acts that occur at different times and places are distinct acts. Fiallo-Lopez, 78 Wn. App. at 724 (citing Handran, 113 Wn.2d at 17).

In this case, Russell entered the carport, loaded items from the carport and the closet into his car, and drove away. His actions occurred at the same time and in the same place. The acts involved the same parties and the same ultimate purpose. Because Russell engaged in a continuing course of conduct, no Petrich instruction was required. There was no error.

Russell also challenges his sentence, arguing that the trial court erred in including prior California convictions in his offender score. We review the calculation of a defendant's offender score de novo. State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 cert. denied, 135 S. Ct. 287, 190 L. Ed. 2d 210 (2014) (citing State v. Bergstrom, 162 Wn.2d 87, 92, 169 P.3d 816 (2007)). A defendant's offender score is calculated based on prior convictions. Id. Out-of-state convictions are classified according to the comparable offense definitions and sentences provided by Washington law. Id. (quoting RCW 9.94A.525(3)). The State has the burden to prove the existence and comparability of out-of-state convictions. Id.

In this case, the State met its burden of proving the existence of out-of-state crimes by submitting certified copies of the information charging Russell with crimes in California, Russell's plea statement and sentence, and clerk's minutes memorializing his guilty plea and sentence. However, Russell argues

that his California convictions are not comparable to Washington offenses and should not have been included in his offender score.

In determining whether out-of-state convictions are comparable to Washington convictions, the court conducts a two-part analysis. Olsen, 180 Wn.2d at 472-73. First, the court compares the legal elements of the out-of-state conviction to the relevant Washington crime. Id. If the out-of-state crime is identical to or narrower than the Washington criminal statute, the foreign conviction counts towards the offender score as if it were the Washington offense. Id. at 473. If the out-of-state statute is broader than the Washington statute, the court considers the underlying facts of the conviction to determine whether the defendant's conduct would have violated the comparable Washington statute. Id. In considering the defendant's conduct, the court may look only to those facts "that were admitted, stipulated to, or proved beyond a reasonable doubt." Id. at 473-74 (citing In re Personal Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005)).

Here, the parties agree that the California burglary statute is broader than the Washington statute because the Washington statute criminalizes unlawful entry into a dwelling or building, while the California crime does not require that the entry be unlawful. RCW 9A.52.025; RCW 9A.52.030; Cal. Penal Code Ann. §459. We thus consider whether the conduct Russell admitted in his plea statements would have violated the Washington statute.

In his plea statement, Russell admitted that he "willfully and unlawfully entered an inhabited dwelling with the intent to commit larceny." CP at 154. He

also admitted that he "willfully and unlawfully entered 2 separate commercial structures...with the intent to commit larceny." CP at 154. The conduct Russell admitted would have violated Washington's residential burglary statute and Washington's second degree burglary statute. RCW 9A.52.030(1); RCW 9A.52.030. The trial court properly included the crimes in Russell's offender score.

Russell asserts that under the United States Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), the court is prohibited from looking to the factual basis of his California convictions. He argues that Washington's two-part comparability analysis, as applied in the present case, does not safeguard the Sixth Amendment rights identified in Descamps.

Our Supreme Court has already rejected Russell's argument. The Descamps court emphasized that the Sixth Amendment prohibits a sentencing court from making findings of fact that properly belong to a jury. Descamps, 133 S. Ct. at 2287-88. The Washington Supreme Court accepted review of State v. Olsen to determine whether the Washington comparability analysis adequately protects the Sixth Amendment concerns articulated in Descamps. Olsen, 180 Wn.2d at 474. The Olsen court held that, because the Washington analysis permits consideration only of facts that were admitted or proved, the analysis survives. Id. at 477. The use of the Washington comparability analysis does not violate Russell's Sixth Amendment rights.

Russell also asserts that his case is analogous to <u>State v. Thomas</u>, 135 Wn. App. 474, 144 P.3d 1178 (2006), in which this court held that the defendant's California burglary conviction was not factually comparable to the Washington crime. Russell is mistaken. In <u>Thomas</u>, the defendant did not admit to unlawful entry and unlawful entry was not proven. <u>Thomas</u>, at 487. Russell, in contrast, admitted to unlawful entry. The trial court did not err in finding that his prior out-of-state convictions were comparable to Washington burglary convictions.

Affirmed.

WE CONCUR:

Spedman, C.J.

Leach, J.

Cox, J.