# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 APR -9 AM 9: 19

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77761-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| ARON DEAN SHELLEY, | ) | |
| | ) | FILED: April 9, 2018 |
| Appellant. | ) | |

VERELLEN, C.J. — Aron Shelley was convicted of one count of assault against his girlfriend, Cheri Burgess, one count of assault of a child against A.S., Burgess's son, and one count of felony harassment for threatening to kill A.S. The jury found each count was a crime of domestic violence. Shelley appeals the domestic violence special verdicts as to assault of a child and felony harassment. Because the State failed to establish that Shelley and A.S. are family or household members, these special verdicts are invalid.

We affirm the convictions, but find the special verdicts on counts 3 and 4 invalid as a matter of law and remand for resentencing.

## FACTS

From late 2013 until April 2015, Shelley, Burgess, and A.S. lived with Shelley's aunt and uncle.

On the evening of April 29, 2015, Shelley became angry and wanted Burgess to leave the house. After attempting to force Burgess out of the house, Shelley placed a knife against Burgess's throat and stated he was going to kill her because she was not leaving. Shelley's uncle, Tom Sovey, intervened and convinced Shelley to give him the knife.

While Burgess and Sovey were talking in the kitchen, Shelley took A.S. out to the car. When Burgess confronted Shelley, Shelley grabbed A.S. by the throat. A.S. made a choking noise, "like he couldn't breathe."[1] And when Burgess tried to grab A.S., Shelley said, "If you don't leave or get away, I'm just gonna squeeze him, keep squeezing him. Get away from me. Leave, leave. Just effing leave. Leave my boy."[2] After Sovey came outside, Burgess walked away and called the police.

The State charged Shelley with, among other things, two counts of second degree assault as to Burgess, one count of second degree assault of a child as to A.S., and one count of felony harassment for threatening to kill A.S. The State alleged each crime was one of domestic violence.

The jury convicted Shelley of one count of assault as to Burgess. The jury found this was a crime of domestic violence because Shelley and Burgess were "members of the same family or household."[3] The jury also convicted Shelley of one count of assault as to A.S. and one count of felony harassment.

---

[1] Report of Proceedings (RP) (Oct. 24, 2017) at 86.

[2] RP (Oct. 24, 2017) at 87.

[3] Clerk's Papers (CP) at 49.

At sentencing, the court calculated Shelley's offender score at 9 for each count and sentenced Shelley to 132 months of total confinement.

Shelley appeals.

## ANALYSIS

### Domestic Violence Special Verdict

Shelley contends his offender score was miscalculated, and he asks this court to remand for resentencing under the correct offender score.[4]

The panel reviews a trial court's calculation of an offender score de novo.[5] "The offender score is the sum of points accrued as a result of prior convictions."[6] A defendant's offender score may be increased if he has committed a felony "domestic violence offense" that was "pleaded and proven" using the definition of "domestic violence" in RCW 9.94A.030.[7]

Under RCW 9.94A.030(20), "'[d]omestic violence' has the same meaning as defined in RCW 10.99.020 and 26.50.010." RCW 10.99.020(5) provides a nonexclusive list of crimes and states, "[d]omestic violence includes but is not limited to any of the following crimes when committed by one *family or household member* against another."[8] And RCW 26.50.010(3) defines "domestic violence" as "[p]hysical

---

[4] We grant Shelley's motion to file a supplemental brief raising an additional assignment of error.

[5] State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

[6] Id.

[7] RCW 9.94A.525(21)(a).

[8] (Emphasis added.)

harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between *family or household members*."[9]

Under RCW 10.99.020(3) and RCW 26.50.010(6), "family or household members" includes

> spouses, former spouses, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including stepparents and stepchildren and grandparents and grandchildren.[10]

And the court properly instructed the jury about the definition of "family or household members" in jury instruction 33.

The State had the burden of establishing Shelley and A.S. had a biological or legal parent-child relationship. It is undisputed that Shelley is not A.S.'s biological father because Shelley and Burgess did not meet until she was six months pregnant.

As to a legal parent-child relationship, the State argues that the jury could have found such a relationship between A.S. and Shelley under the presumed parent or de facto parentage doctrines. But the State fails to cite any authority to support the argument that these doctrines may be adjudicated in a criminal

---

[9] (Emphasis added.)

[10] RCW 26.50.010(6) adds domestic partners and former domestic partners to the definition.

proceeding. Rather, these doctrines allow a court in a civil action to make a judicial declaration of parentage.

The presumption of parentage is contained in RCW 26.26.116 of the Uniform Parentage Act. RCW 26.26.116(2) provides "[a] person is presumed to be the parent of a child if, for the first two years of the child's life, the person resided in the same household with the child and openly held out the child as his or her own." But this "presumption" does not operate independent of the other requirements of the Uniform Parentage Act. RCW 26.26.500 provides that "[a] *civil* proceeding may be maintained to adjudicate the parentage of a child."[11] And under RCW 26.26.605, "[t]he court, without a jury, shall adjudicate the parentage of a child." Similarly, the de facto parent doctrine allows a court in a civil proceeding to adjudicate parentage.[12] It would be incongruous with the statutory scheme and existing case law to allow a parentage determination in a criminal proceeding.

The State did not present the trial court with any evidence of such a judicial determination. On this record, the State's presumptive parent and de facto parent theories fail.[13]

Because A.S. and Shelley are not family or household members, the domestic violence special verdicts on count 3, second-degree assault of a child, and

---

[11] (Emphasis added.)

[12] See, e.g., In re Parentage of L.B., 155 Wn.2d 679, 122 P.3d 161 (2005); In re Custody of Shields, 157 Wn.2d 126, 136 P.3d 117 (2006); In re Custody of B.M.H., 179 Wn.2d 224, 315 P.3d 470 (2013); In re Custody of A.F.J., 179 Wn.2d 179, 314 P.3d 373 (2013).

[13] Any suggestion that the jury in this criminal matter may have applied the presumptive parent or de facto parent theories also fails because the State did not argue or request any instructions on either theory in the trial court.

count 4, felony harassment, are invalid as a matter of law. These invalid special verdicts directly affect the court's calculation of Shelley's offender score for counts 3 and 4 and indirectly affect the calculation of his offender score for count 1.

We therefore remand for resentencing based upon an offender score consistent with this opinion.

### Statement of Additional Grounds

In the statement of additional grounds, Shelley contends the court failed to address his mental stability at trial.

On July 29, 2015, the court ordered a pretrial mental evaluation to determine Shelley's competency to stand trial. In her report, Melissa Dannelet, a licensed psychologist at Western State Hospital, opined Shelley "has the capacity to understand the nature of proceedings against him and to assist in his defense."[14] On August 31, 2015, the court entered an agreed order of competency.

On June 22, 2016, the court ordered a second pretrial mental evaluation to determine Shelley's mental state. In her report, Dannelet opined Shelley "had the capacity to form the requisite mental state to commit the alleged offenses."[15]

At trial, Shelley asserted a defense of diminished capacity. The defense offered David Dixon, a forensic clinical psychologist, who testified that Shelley "was not able to form the intent to commit the crimes he's charged with."[16] The State

---

[14] CP at 28.

[15] CP at 44.

[16] RP (Oct. 26, 2016) at 254.

6

offered Dannelet, who testified Shelley "did have the capacity to form intent [at] the time of his actions."[17]

Shelley's mental stability was adequately addressed by the two mental evaluations and the expert testimony presented at trial.

Shelley also claims Burgess's statement changed between the night of the incident and trial. But defense counsel cross-examined Burgess on this issue during trial.

We conclude the statement of additional grounds does not support any relief on appeal.

We affirm the convictions, but find the special verdicts on counts 3 and 4 invalid as a matter of law and remand for resentencing based upon an offender score consistent with this opinion.

WE CONCUR:

---

[17] RP (Oct. 26, 2016) at 328.