# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50631-9-II |
| Respondent, | |
| v. | |
| RUBEN SOLOVIOV, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Ruben Soloviov appeals his convictions for first degree burglary and second degree assault, arguing that the trial court erred by limiting his cross-examination of the victim. Soloviov also appeals his sentence, arguing the trial court erred by including Oregon convictions that are not comparable to Washington offenses in his offender score and that he received ineffective assistance of counsel when his counsel failed to argue his offenses were the same criminal conduct. We affirm Soloviov's convictions, reverse his sentence, and remand for resentencing consistent with this opinion.

## FACTS

On January 12, 2016, Steven Garrison was attacked in his apartment and had his cash and cell phone taken. Garrison identified Soloviov as the perpetrator. The State charged Soloviov with first degree burglary, first degree robbery, and second degree assault.

At Soloviov's jury trial, Garrison testified that he allowed a woman named Luda and her friend, Ruben Soloviov, to stay at his apartment. The next afternoon, after everyone had left the apartment, Soloviov came back and told Garrison that he had left his jacket in the apartment. Garrison looked for Soloviov's jacket but did not find it in the apartment. When Garrison went to leave the apartment after not finding the jacket, Soloviov was waiting at the door. Garrison testified that Soloviov began hitting him and forced his way into the apartment. In the apartment, Soloviov continued hitting Garrison with various objects, and took Garrison's cash and cell phone.

The next day, Garrison went to the emergency room. The emergency room physician noted multiple bruises and contusions. Garrison also had a broken bone in his left hand. Officer Adam Millard of the Vancouver Police Department responded to the emergency room to investigate the potential assault against Garrison.

Prior to trial, the State filed a motion in limine to exclude any reference to Garrison's history of drug use. The trial court reserved ruling on the motion until he heard the testimony and evidence presented at trial.

During Officer Millard's testimony, Soloviov informed the trial court outside the presence of the jury that he intended to ask about methamphetamine and a scale found in Garrison's apartment. Soloviov asserted that it demonstrated there was methamphetamine "presumably to use in a time period very close to the alleged incident itself and methamphetamine could certainly have an effect on someone's ability to perceive and/or memory." Verbatim Report of Proceedings (VRP) (March 28, 2017) at 198. The State argued the evidence was not relevant because the scale was found five days after the charged incident and was part of an unrelated investigation. In

addition, the State asserted that Officer Millard only found a scale and did not find any actual methamphetamine. The trial court found some relevance based on Soloviov's belief that Garrison would later admit to methamphetamine use around the time of the charged incident, but excluded the evidence based on the substantial risk of unfair prejudice.

During Garrison's testimony, outside the presence of the jury, Soloviov sought permission to ask Garrison "[i]f he had been using methamphetamine and alcohol for the past six months prior to the incident." VRP (March 29, 2017) at 431. Soloviov did not assert or establish that Garrison had actually used methamphetamine on the day of the charged incident or that he was actually under the influence of methamphetamine during the incident. The trial court determined that the evidence had little, if any, probative value. The trial court further determined that the probative value, if any, was outweighed by the risk of unfair prejudice. The trial court maintained its previous position that history of Garrison's drug use was not admissible at trial.

The jury found Soloviov guilty of first degree burglary and second degree assault.

The State calculated Soloviov's offender score at six by including one point for Soloviov's Oregon conviction for unauthorized use of a motor vehicle, two points for Soloviov's Oregon conviction for second degree assault, one point for Soloviov's Oregon conviction for unlawful delivery of methamphetamine, and two points for Soloviov's current offenses.

The State included certified copies of the judgments for Soloviov's Oregon offenses. In addition to the judgment for the unauthorized use of a motor vehicle, the State included Soloviov's statement of plea of guilty, in which Soloviov stated, "On May 31, 2002 I knew I took and operated a motor vehicle that did not belong to me and it was worth more than $10,000." Clerk' Papers

3

(CP) at 182. The State also included a copy of the information charging Soloviov with second degree assault and Soloviov's petition to plead guilty to second degree assault. The information charging Soloviov with second degree assault stated, "The defendant, on or about October 30, 2008, in Clackamas County, Oregon, did unlawfully and knowingly cause physical injury to Thao Phuong Nguyen by means of a deadly weapon, to-wit: a firearm, by using and threatening to use a firearm against Thao Phuong Nguyen." CP at 202. Soloviov's petition to plead guilty to the second degree assault did not contain a factual statement.

At sentencing, the State conceded that Soloviov's Oregon convictions for unauthorized use of a motor vehicle and second degree assault were not legally comparable to Washington offenses. Instead, the State argued that the Oregon offenses were factually comparable based on Soloviov's statement in his guilty plea to unauthorized use of a motor vehicle and the information charging Soloviov with second degree assault. Soloviov argued the State failed to meet its burden to prove legal or factual comparability.

The trial court ruled that Soloviov's Oregon conviction for unauthorized use of a motor vehicle "would score either as the theft or possession here in the Washington counterpart" and that Soloviov's Oregon second degree assault conviction would score as a point because of "the use of the firearm threatening an assault." VRP (April 25, 2017) at 804. Therefore, the trial court calculated Soloviov's offender score at 6 for both the first degree burglary and second degree assault convictions. The trial court imposed a standard range sentence of 75 months.

Soloviov appeals.

ANALYSIS

Soloviov appeals his convictions, arguing that the trial court violated his right to confront witnesses by limiting his cross-examination of Garrison regarding Garrison's past history of drug use. Soloviov also appeals the calculation of his offender score and claims that he received ineffective assistance of counsel at sentencing.

Soloviov's challenges based on his right to cross-examine Garrison and ineffective assistance of counsel fail. However, we agree with Soloviov that the trial court erred in calculating his offender score and reverse Soloviov's sentence. Therefore, we affirm Soloviov's convictions but reverse his sentence.

A.    RIGHT TO CROSS-EXAMINATION

Soloviov argues that his right to cross-examine witnesses was violated because the trial court prohibited him from asking about Garrison's history of methamphetamine use. Because Soloviov failed to lay an appropriate foundation for cross-examination, the trial court did not abuse its discretion in limiting cross-examination. Accordingly, we affirm Soloviov's convictions.

Criminal defendants have the right to cross-examine witnesses guaranteed by both the federal and state constitutions. *State v. Arredondo*, 188 Wn.2d 244, 265, 394 P.3d 348 (2017). However, the right to cross examine witnesses is not absolute. *Id*.

> If a witness' past use of intoxicants has not been shown to produce ongoing mental deficiencies, such use is relevant only if the cross-examining party can demonstrate that the witness was under the influence either at the time the witness observed the events at issue or when the witness is called on to testify.

*Id.* at 269.

The scope of cross examination is within the discretion of the trial court. *Id.* at 265-66. Therefore, we review the trial court's decision to limit cross examination for a manifest abuse of discretion. *Id.* at 265. A trial court manifestly abuses its discretion when the trial court's exercise of discretion is manifestly unreasonable or is based upon untenable grounds or reasons. *Id.*

Here, there was no evidence that Garrison had ongoing mental deficiencies resulting from the drug use, that Garrison was under the influence on the day of the assault, or that Garrison was under the influence while testifying. Therefore, evidence of a past history of drug use was not relevant.[1] Accordingly, the trial court did not abuse its discretion by refusing to allow Soloviov to cross-examine Garrison about his history of drug use.

B.      COMPARABILITY OF OREGON OFFENSES

Soloviov argues that the trial court erred by including his Oregon convictions for unauthorized use of a motor vehicle and second degree assault in his offender score because they were not legally or factually comparable to Washington offenses. We disagree that the trial court erred by including the Oregon unauthorized use of a motor vehicle conviction in Soloviov's offender score. However, we agree that the trial court erred by including Soloviov's Oregon second degree assault conviction in Soloviov's offender score.

---

[1] In addition, ER 403 allows evidence to be excluded when the probative value "is substantially outweighed by the danger of unfair prejudice." Here, there was no evidence that Garrison was under the influence of drugs at the time of the incident or at the time he was testifying, nor was there any evidence that past drug use caused ongoing mental deficiencies. Therefore, even if the desired cross-examination had any probative value, the danger of unfair prejudice was high because jurors may be prejudiced by allegations about Garrison's past drug use for reasons that are unrelated to his ability to perceive or remember the event. Thus, the trial court also properly excluded the evidence under ER 403 because the danger of unfair prejudice substantially outweighed any minimal probative value, if any, of the evidence of Garrison's history of drug use.

1.      Legal Principles

We review the trial court's calculation of a defendant's offender score de novo. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187, *cert. denied*, 135 S. Ct. 287 (2014). "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). The State bears the burden of proving by a preponderance of the evidence the existence and comparability of defendant's prior out-of-state convictions. *State v. Collins*, 144 Wn. App. 547, 554, 182 P.3d 1016 (2008), *review denied*, 165 Wn.2d 1032 (2009).

To determine comparability of offenses, we must first determine if the crimes are legally comparable. *Olsen*, 180 Wn.2d at 472. To determine legal comparability, the elements of the out-of-state conviction are compared to the elements of the relevant Washington criminal statute. *Id.* at 472-73. "If the foreign conviction is identical to or narrower than the Washington statute and thus contains all the most serious elements of the Washington statute, then the foreign conviction counts toward the offender score as if it were the Washington offense." *Id.* at 472-73.

If the out-of-state statute is broader than the Washington statute, we then determine factual comparability. *Id.* at 473. To determine factual comparability, we look at whether the defendant's conduct in the out-of-state conviction would have violated the comparable Washington statute. *Id*. In determining factual comparability, only facts that were admitted, stipulated to, or proved beyond a reasonable doubt are considered. *Id.* at 473-74. "[F]acts in a charging document that are untethered to the elements of a crime are outside the proper scope of what courts may consider" to determine factual comparability. *State v. Davis*, 3 Wn. App. 2d 763, 782, 418 P.3d 199 (2018).

    2.      Oregon conviction for unauthorized use of a motor vehicle

Soloviov argues that the trial court erred by including his Oregon conviction for unauthorized use of a motor vehicle in his offender score because his Oregon conviction is not legally or factually comparable to Washington's taking a motor vehicle without permission, RCW 9A.56.070. However, the trial court did not include Soloviov's Oregon conviction for unauthorized use of a motor vehicle because it was comparable to taking a motor vehicle without permission. The trial court included Soloviov's Oregon conviction for unauthorized use of a motor vehicle because it was comparable to theft.

The relevant Washington statutes in effect at the time were first degree theft, former RCW 9A.56.030 (1995), and the accompanying definition of theft, former RCW 9A.56.020(1) (1975). In Washington, first degree theft is theft of goods or services worth more than $1,500. Former RCW 9A.56.030 (1995). Theft means:

> (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
> (c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

Former RCW 9A.56.020 (1975).

By admitting that he knew he took and operated a motor vehicle that did not belong to him and that the vehicle was worth more than $10,000, Soloviov admitted to facts that would be a violation of Washington's first degree theft statute. Therefore, the trial court did not err by

including Soloviov's Oregon conviction for unauthorized use of a motor vehicle in his offender score.

3.      Oregon conviction for second degree assault

Soloviov argues that the State failed to meet its burden to prove that his Oregon conviction for second degree assault is comparable to a Washington second degree assault.  The State concedes that Soloviov's Oregon conviction for second degree assault is not comparable to a Washington second degree assault.  We accept the State's concession.

In Oregon second degree assault is defined as: (1) intentionally or knowingly causing serious physical injury to another; (2) intentionally or knowingly causing injury with a deadly or dangerous weapon; or (3) recklessly causing physical injury with a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.  ORS 163.175(1).  In Washington, second degree assault is committed when,

> A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
>      (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
>      (b) Intentionally and unlawfully causes substantial bodily harm to an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child; or
>      (c) Assaults another with a deadly weapon; or
>      (d) With intent to inflict bodily harm, administers to or causes to be taken by another, poison or any other destructive or noxious substance; or
>      (e) With intent to commit a felony, assaults another; or
>      (f) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture; or
>      (g) assaults another by strangulation or suffocation.

RCW 9A.36.021(1).

Given the different statutory requirements, it is possible to commit second degree assault in Oregon without violating Washington's second degree assault statute. For example, if a person knowingly causes serious physical injury to another person (that does not amount to torture), the person would have committed second degree assault in Oregon without violating the Washington second degree assault statute. Therefore, Oregon's second degree assault statute is not legally comparable to Washington's second degree assault statute. The State properly concedes that Soloviov's Oregon second degree assault conviction is not legally comparable to a Washington second degree assault conviction.

However, on appeal, the State relies on the facts alleged in the Oregon information to argue that Soloviov's conviction is factually comparable to a Washington third degree assault conviction. But facts alleged only in an information may not be considered when determining factual comparability. *Davis*, 3 Wn. App. 2d at 782. Because Soloviov did not admit any facts in his guilty plea to second degree assault, there are no facts to establish factual comparability of Soloviov's Oregon second degree assault conviction. Accordingly, Soloviov's Oregon second degree assault conviction should not have been included in his offender score.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Soloviov argues that he received ineffective assistance of counsel when his counsel failed to argue that his current offenses were the same criminal conduct. We do not reach this issue.

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance

of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Id.* at 33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Recently, our Supreme Court held that the record must be sufficient for us to determine what counsel's reasons for the decision were in order to evaluate whether counsel's performance was a legitimate tactic. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.*

Here, the reasons that Soloviov's counsel failed to argue that his current offenses were the same criminal conduct are not in the record before us. Therefore, we cannot determine whether counsel's performance was deficient for failing to argue that Soloviov's current offenses were the same criminal conduct. *See id.* Based on the record before us, it is not possible to ascertain counsel's reasons for failing to argue Soloviov's offenses were the same criminal conduct.

No. 50631-9-II

Therefore, Soloviov must bring a collateral challenge. *Id*; *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

We affirm Soloviov's convictions, but we reverse Soloviov's sentence and remand for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, A.C.J.

We concur:

Sutton, J.

Evans, J.P.T.