# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55078-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KEVIN ANTHONY RED, | |
| Appellant. | |

MAXA, J. – Kevin Red appeals a 2002 trial court order on remand from this court determining that his offender score was correctly calculated in 1999.[1] He argues that the trial court erred because his prior Louisiana manslaughter conviction included in his offender score was not comparable to a Washington offense.

We conclude that the Louisiana conviction is not legally comparable to a Washington offense and the record does not support a finding of factual comparability. Accordingly, we reverse the trial court's 2002 order and remand for the trial court to address factual comparability and, if necessary, resentencing.[2]

### FACTS

In 1999, Red forced his way into a hotel room with a firearm and shot one of the occupants. A jury found him guilty of attempted second degree murder, first degree burglary,

---

[1] In July 2020, Red filed a direct appeal of the trial court's September 2002 order. Even though the order was entered 18 years previously, a commissioner of this court accepted Red's late notice of appeal for filing because Red was not properly advised of his right to appeal.

[2] Red also argues that he was not permitted to attend the 2002 comparability hearing in violation of his right to be present. Because we remand for resentencing, we do not address this argument.

and first degree unlawful possession of a firearm. The court sentenced him to 357 total months of confinement based on an offender score of 7. Red's offender score included a 1991 first degree manslaughter conviction from Louisiana for an offense committed in 1990.

This court affirmed Red's convictions in 2001 but remanded to the trial court for a hearing to determine the nature of Red's Louisiana conviction and therefore his offender score.

The trial court scheduled a resentencing hearing. But the record contains no submission from the State regarding Red's 1991 Louisiana conviction or comparability in general.

After a hearing in September 2002, the trial court concluded that Red's Louisiana manslaughter conviction was at least comparable to Washington's crime of first degree manslaughter. Therefore, the court ruled that Red's offender score had been properly calculated in 1999 and that Red's sentence was correct. The court provided no written findings or analysis regarding comparability in the order. And the transcript from the hearing was destroyed after 15 years pursuant to retention guidelines.

Red appeals the trial court's comparability order.

ANALYSIS

Red argues that the trial court's 2002 order must be reversed because nothing in the record supports the court's conclusion that his Louisiana conviction was comparable to a Washington offense.[3] We agree.

---

[3] Red filed four prior personal restraint petitions (PRPs) challenging the inclusion of his Louisiana conviction in his offender score. This court dismissed all four as untimely. The State argues that the comparability argument already has been rejected by this court in one of those PRPs, claiming that res judicata applies. But while dismissing the PRPs as untimely, this court did not address the merits. The court merely noted that the trial court had reaffirmed its prior sentence.

A.    LEGAL PRINCIPLES

Out-of-state convictions can be included in a defendant's offender score only if they are either legally or factually comparable to a Washington conviction. *State v. Arndt*, 179 Wn. App. 373, 378, 320 P.3d 104 (2014). The State bears the burden of proving comparability. *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004). We review the trial court's comparability analysis de novo. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

We apply a two-part test to determine whether an out-of-state offense is comparable to a Washington offense. *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). First, we determine if the offenses are legally comparable by comparing their elements. *Id.* The elements of the out-of-state offense must be compared to the elements of a Washington criminal statute that was in effect when the out-of-state crime was committed. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). Legal comparability exists when the out-of-state offense is the same or narrower than the Washington offense. *Olsen*, 180 Wn.2d at 473.

Second, if the offenses are not legally comparable, we determine whether the offenses are factually comparable by deciding if "the defendant's conduct would have violated a Washington statute." *Canha*, 189 Wn.2d at 367. In assessing factual comparability, we can consider only those facts in the out-of-state proceeding that were proven to a trier of fact beyond a reasonable doubt or to which the defendant admitted or stipulated. *Id.*

B.    COMPARABILITY ANALYSIS

    1.    Legal Comparability

Nothing in the existing record explains the trial court's analysis in concluding that Red's Louisiana conviction was comparable to a Washington offense. But legal comparability is a question of law, and our review is de novo. *Olsen*, 180 Wn.2d at 472. Therefore, we can

3

address legal comparability without an adequate record by comparing the Louisiana and Washington statutes.

In 1990 when Red committed his Louisiana offense, the Louisiana manslaughter statute was former Louisiana Statutes Annotated (LSA) § 14:31 (1973). Section one of that statute defined manslaughter as a homicide that would be first or second degree murder "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." Former LSA § 14:31(1). First degree murder required a specific intent to kill or inflict great bodily injury. Former LSA § 14:30 (1990). Second degree murder required (1) a specific intent to kill or inflict great bodily injury, (2) killing someone in the course of certain crimes without such intent, (3) unlawfully distributing controlled substances that causes the death of a person, or (4) unlawfully distributing controlled substances to another person who subsequently disputes the controlled substance that causes the death of a person. Former LSA § 14:30.1 (1987).

Section two of former LSA § 14:31 defined manslaughter as a homicide committed without any intent to cause death or great bodily harm when (a) the offender was engaged in a felony not listed in Louisiana Statutes Annotated § 14:30 or any intentional misdemeanor directly affecting the person, or (b) the offender is resisting lawful arrest under certain circumstances. Former LSA § 14:31(2).

In Washington, second degree murder required intent to cause death but without premeditation or causing the death of a person while committing or attempting to commit any felony. Former RCW 9A.32.050(1) (1976). Former RCW 9A.32.060(1)(a) (1975) defined first degree manslaughter as recklessly causing the death of another person. The criminal code defined the "recklessness" mental state as when a person "knows of and disregards a substantial

4

risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation." Former RCW 9A.08.010(1)(c) (1975).

Louisiana's offense of manslaughter was not legally comparable to Washington's offense of second degree murder. The second section of the Louisiana manslaughter statute did not require an intent to cause death as in Washington. And that section defined manslaughter to include a death that occurred during the commission of a misdemeanor, not only during the commission of a felony as in Washington.

Louisiana's offense of manslaughter also was not legally comparable to Washington's offense of first degree manslaughter. As noted, the second section of the Louisiana manslaughter statute required only that the death occur in the course of certain felonies and intentional misdemeanors without any reckless conduct requirement as in Washington.

Therefore, we conclude that the Louisiana manslaughter conviction was not legally comparable to a Washington offense.

2. Factual Comparability

Even if there was no legal comparability, Red's Louisiana conviction could be included in his offender score if there was factual comparability. *Canha*, 189 Wn.2d at 367. However, we do not know whether the trial court ruled based on factual comparability as opposed to legal comparability. In addition, nothing in the record shows that the State submitted any information to the trial court about the Louisiana conviction that would support a finding of factual comparability. And the State had the burden of proving comparability. *Ross*, 152 Wn.2d at 230.

Therefore, we must reverse the trial court's ruling that the Louisiana conviction was comparable to a Washington offense.

CONCLUSION

We reverse the trial court's 2002 comparability order and remand for the trial court to address factual comparability and, if necessary, for resentencing. On remand, the State will have the opportunity to prove the factual comparability of the Louisiana conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

VELJACIC, J.