IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 797841-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRADLEY MICHAEL KEY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — After affirming Bradley Key's convictions on direct appeal, a panel of this court remanded for resentencing based in part on the State's concession that it had failed to adequately prove Key's criminal history for calculation of his offender score. Key was resentenced in 2019 to 129 months of incarceration based on an offender score of two, which was based solely on out-of-state convictions. Key appeals a second time, arguing that his offender score was again erroneously calculated due to the State's repeated failure to meet its burden to prove the out-of-state convictions. He also asserts, and the State concedes, that the court improperly imposed interest on legal financial obligations. We remand for resentencing consistent with this opinion.

FACTS

Bradley Key was convicted of assault in the first degree, a most serious or "strike" offense, and two counts of assault in the fourth degree following a jury trial.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

Key was originally sentenced to 161 months in prison based on an offender score of five. He appealed, raising numerous issues, but a panel of this court affirmed the conviction.[1] In its response to that appeal, the State conceded that it had failed to meet its burden to prove Key's out-of-state criminal history in order to support the court's finding of an offender score of five. As a result, the case was remanded for resentencing.

On remand, the State argued Key's offender score was two. The State's calculation was based on two out-of-state felony convictions: "take and drive vehicle without consent" in Wisconsin in 2001 and "unlawful driving or taking of a vehicle" in California in 2010. The prosecutor asserted that the Wisconsin conviction did not wash out based on some intervening misdemeanor convictions from Florida. The State did not otherwise attempt to prove up the Florida convictions or seek a comparability determination for them from the court. Though the prosecutor urged the judge to consider the charging document and police reports related to the out-of-state felony convictions, the sentencing court ruled it would be improper to consider them.

The State explicitly asserted that it was arguing both the Wisconsin and California convictions at issue were legally comparable, therefore it was not alleging factual comparability. Key objected to all of the State's claims regarding his criminal history and suggested that he should be sentenced with an offender score of zero based on his objection to the comparability of any out-of-state convictions. The court found both the Wisconsin and the California convictions

---

[1] State v. Key, No. 76136-6-I (Wash. Ct. App. June 25, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/761366.PDF.

were legally comparable and adopted the reasoning in the State's sentencing brief. The court then sentenced Key on an offender score of two and imposed a midrange sentence of 129 months in the Department of Corrections. Key appeals for a second time.

## ANALYSIS

I.     Use of Out-of-State Convictions in Offender Score Calculation

Key argues his resentencing was flawed due to an incorrect offender score that was entirely based on out-of-state convictions. He asserts that the Wisconsin and California convictions were improperly considered after insufficient comparability analysis. We agree. Because our remand in this case results in Key's third sentencing in this case, we offer more explicit guidance as to the calculation of his offender score.[2]

"We review a sentencing court's calculation of an offender score de novo." State v. Tili, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). Further, we review "[a] court's determination of whether an out-of-state conviction is legally comparable…in Washington is reviewed de novo." State v. Bluford, 188 Wn.2d 298, 316, 393 P.3d 1219 (2017). An "offender score is the sum of points accrued as a result of prior convictions." State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d

---

[2] The transcript of the resentencing hearing suggests that the State had in its possession certified copies of the documents referenced herein, that the defense did not object to their consideration by the trial court and that the court ordered that the certified copies be filed during the hearing. However, they were not transmitted to this court in the record on appeal.

Photocopies of these certified documents were attached to the State's sentencing memorandum which is contained in the Clerk's Papers. Because the defense neither objected to the documents as insufficient at the trial court, nor provided them as exhibits for our de novo review of sentencing, we consider them here. However, this should not be construed as relieving the State of its burden to prove the convictions via properly authenticated evidence.

187 (2014). RCW 9.94A.525(3) provides, "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." The State bears the burden of proving the existence and comparability of all out-of-state convictions it is attempting to utilize. Olsen, 180 Wn.2d at 472. The State must prove an individual's prior criminal history, including foreign convictions, for purposes of offender score by a preponderance of the evidence. State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). "[A] sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." State v. Wilson, 170 Wn.2d 682, 688-89, 244 P.3d 950 (2010) (quoting In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618 (2002)).

Washington employs a two-part test to determine whether a foreign conviction may be utilized at sentencing. State v. Morley, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998). For sentencing, we look to the law in place at the time the individual committed the offense. In re Pers. Restraint of Carrier, 173 Wn.2d 791, 808-09, 272 P.3d 209 (2012); RCW 9.94A.345. "First, the court analyzes legal comparability by comparing the elements of the out-of-state offense to the most comparable Washington offense." State v. Marquette, 6 Wn. App. 700, 705, 431 P.3d 1040 (2018). "Where the statutory elements of a foreign conviction are broader than those under a similar Washington statute, the foreign conviction cannot truly be said to be comparable." In re Pers. Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005). "Second, if the offenses are not legally comparable, the court analyzes factual comparability." Marquette, 6 Wn. App. at

705. "Offenses are factually comparable when the defendant's conduct would have violated a Washington statute." Id. "Any attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction, proves problematic." Lavery, 154 Wn.2d at 258. "[A] certified copy of a prior judgment is highly reliable evidence when analyzing foreign crimes that are legally comparable to Washington crimes." Olsen, 180 Wn.2d at 473.

A. Wisconsin Conviction

At resentencing, the State sought inclusion of a conviction associated with Key for "take and drive vehicle without consent"[3] from Wisconsin in 2001. However, the State concedes in its response brief in this second appeal that this crime is not legally comparable to a Washington felony. The State expressly agrees that the elements of this crime are broader in Wisconsin than the comparable crime in this state of taking a motor vehicle without permission in the second degree under RCW 9A.56.075. The State then suggested that this court should find the crimes are factually comparable.

This argument was not raised in the trial court. In fact, the State explicitly confirmed on the record that it was not seeking factual comparability analysis at resentencing, which Key now argues constitutes waiver of the issue on appeal. Perhaps more importantly, the record is insufficient for this panel to engage in such analysis. The documents submitted by the State relating to this conviction include

---

[3] Wis. Stat. § 943.23 (2001) is titled "Operating vehicle without owner's consent." All of the documents contained in the record refer to the crime as "take and drive vehicle without consent" based on the language in subsection (2) of the statute under which Key was convicted.

a charging document and police reports. Again, when engaging in analysis of factual comparability, the court may only consider facts that were proved to a finder of fact beyond a reasonable doubt or admitted or stipulated by the defendant. Lavery, 154 Wn.2d at 258. The documents the State presented demonstrate that Key was convicted and sentenced for that crime after entry of a "guilty/no contest" plea, but the plea statement is not included. In briefing, the State claims that the Wisconsin court engaged in a factual inquiry prior to the acceptance of the plea. But in support of this assertion, it cites only to what appear to be docket notes and while they do confirm that procedural step, the notes merely indicate "Defendant enters pleas of guilty to 943.23(2) and 346.04(3). . . . Court finds a factual basis to accept plea." All this shows is that Key entered pleas to certain Wisconsin statutes and the court found those pleas proper based on some additional information that does not appear in the record before us.

The State has again failed to meet its burden to prove the defendant's criminal history because it does not provide any evidence of the facts to which Key admitted or stipulated. The charging document contains allegations against Key, and incorporates by reference the report of a responding officer, but the record before the resentencing court and this panel on appeal is devoid of any evidence that Key admitted the truth of those allegations as set out in those documents. We cannot determine whether he admitted guilt to more generic statutory language or the specific facts alleged by the prosecutor and police. Factual comparability analysis is fundamentally improper on the record as presented because of the lack

of sufficient proof.  See State v. Davis, 3 Wn. App.2d 763, 776-782, 418 P.3d 199 (2018).

B.  Florida Convictions

At the resentencing hearing, the State referenced a number of convictions from Florida, but did not seek to include them in Key's offender score or otherwise engage in comparability analysis.  It did, however, file a number of documents relating to those Florida convictions as exhibits to its sentencing memorandum.  Key's purported Florida convictions must be properly reviewed to determine whether washout is prevented such that the Wisconsin case would be included in the offender score if found factually comparable.

The State argues Wisconsin's "take and drive vehicle without consent" is comparable to the Washington crime taking motor vehicle without permission in the second degree, which is a Class C felony.  RCW 9A.56.075.  Class C felonies, other than sex offenses, are not included in one's offender score (they "washout") if, since the last date of release from confinement or entry of judgment from a felony conviction, the individual has spent five consecutive years without any criminal conviction.  See RCW 9.94A.525(2)(c).  For an out-of-state conviction to interrupt the washout period for a prior conviction, the interrupting conviction must be proven to be comparable to a Washington offense.  See RCW 9.94A.525(2)(c); Marquette, 6 Wn. App.2d 703.

Again, the State offered no argument in the trial court as to washout and comparability of those Florida crimes; it merely asserted in briefing that the convictions existed between 2007 and 2010.  The prosecutor did argue that the

court should consider the Florida crimes as a pattern of behavior by Key as justification for the imposition of a sentence at the high end of his sentencing range. Given that procedural background, and the repeated difficulties in the sentencing proceedings in this case, we will assist in framing the court's review on remand. Each of Key's Florida convictions need not be reviewed for purposes of determining whether washout prevents use of older out-of-state convictions, as a single conviction is sufficient under RCW 9.94A.525(2)(c). The State could choose one, prove its existence and the relevant timing as to Key's release from confinement by proper evidence, and then would need to demonstrate legal and/or factual comparability.

For example, it appears that the 2008 conviction for "fraudulent use of credit cards" in Florida is legally comparable to other Washington crimes. On appeal, Key argues that the Florida statute is broader because it would include conduct such as making false statements about one's financial condition to obtain credit. Section 817.61 of the Florida Statute (2008), states in relevant part:

> A person who, with intent to defraud the issuer or a person or organization providing money, goods, services, or anything else of value or any other person, uses, for the purpose of obtaining money, goods, services, or anything else of value, a credit card obtained or retained in violation of this part or a credit card which he or she knows is forged, or who obtains money, goods, services, or anything else of value by representing, without the consent of the cardholder, that he or she is the holder of a specified card or by representing that he or she is the holder of a card and such card has not in fact been issued violates this section.

Key argues that Florida would criminalize the conduct of wrongfully obtaining value by use of a credit card so obtained, but that Washington would not. This would mean the Florida statute under which Key was convicted is not legally

comparable. In briefing, Key compares the Florida statute to three separate Washington crimes, concluding that the Florida statute is broader as it incorporates elements of those crimes, as well as additional conduct.[4] The language that Key targets for his proposition that the Florida statute captures more conduct than Washington actually would constitute a crime under RCW 9.38.010 (2008) which states:

> Every person who, with intent thereby to obtain credit or financial rating, shall willfully make any false statement in writing of his assets or liabilities to any person with whom he may be either actually or prospectively engaged in any business transaction or to any commercial agency or other person engaged in the business of collecting or disseminating information concerning financial or commercial ratings, shall be guilt of a misdemeanor.

The question is whether the criminalized conduct in another state would violate the law here in Washington. Marquette, 6 Wn. App. at 705. The conduct addressed in this Florida statute overlaps with various Washington crimes used in Key's analysis, and that which he alleges renders it broader, is all included in the Revised Code of Washington.

The "fraudulent use of credit cards" conviction from Florida alleged to have occurred on September 28, 2003 is legally comparable to Washington's crime of false representation concerning credit. The record demonstrates that the latest Key would have been released from prison after the 2001 Wisconsin conviction was in the end of 2003,[5] and he remained under supervision by Wisconsin State

---

[4] Key's analysis of Fla. Stat. § 817.61 (2008) centers on Washington's forgery (under former RCW 9A.60.020), identity theft in the second degree (under former RCW 9.35.020) and theft by deception (RCW 9A.56.020(1)(b)).

[5] The Judgment of Conviction contained in the record demonstrates that Key was sentenced on September 27, 2001 to a term of confinement of two years and six months in the custody of Wisconsin State Prisons, received credit for 140 days of credit for time served and was subject to post-release supervision.

Prisons for another two years and six months. The timing of his release into the community after the Wisconsin case and the date of violation for this Florida conviction is suggestive that the Florida misdemeanor prevents washout. As such, if the State is able to sufficiently prove the date Key was released from confinement in Wisconsin relative to the date of violation of the Florida conviction, the court could reach the 2001 Wisconsin conviction for consideration of its inclusion in the calculation of Key's offender score after proper comparability analysis.

C. California Conviction

Finally, the State sought to utilize a 2010 conviction from California for "unlawful driving or taking of a vehicle." This crime is contained in California Vehicle Code section 10851 which, as codified in 2010, states in relevant part:

> (a) Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense.

Key correctly argues that the California statute is broader on its face due to its inclusion of culpability if one is "an accessory to" the principal. In California, liability as an accessory is distinct from accomplice liability. See People v. Boyer, 38 Cal. 4th 412, 467, 133 P.3d 581, 620 (2006). Washington law does not have a provision for finding a person guilty as merely an accessory to the theft of a motor vehicle, as accessory liability in general no longer exists in Washington. See State v. Jihad, 130 Wn. App. 1017 (2005). Much of the conduct that would constitute accessory

liability as to a crime would now be captured in one of the varying degrees of the separate crime of rendering criminal assistance. See RCW 9A.76.050

California's crime of "unlawful driving or taking of a vehicle" is broader due to the inclusion of accessory liability. Any conduct that would constitute accessory liability for this crime would either not constitute a crime in Washington or would fall under rendering criminal assistance in the second degree, which is a gross misdemeanor. See RCW 9A.76.080. Misdemeanor rendering criminal assistance would not be calculated in Key's offender score for purposes of sentencing on assault in the first degree. See RCW 9.49A.525.

The trial court erroneously determined that the California conviction should be included in Key's offender score based on legal comparability. The California crime is legally broader, which means that the court must then engage in factual comparability analysis before it may be utilized in an offender score. However, the State again only provided an abstract of judgment, charging document and accompanying police reports as proof of this conviction. The critical piece of evidence required for comparability analysis is missing: proof of the facts to which Keys stipulated or admitted. The trial court properly noted in the resentencing hearing that it would be improper to consider "police reports that were attached to a charging document" and declined the State's suggestion to do so. On the record before us, factual comparability analysis consistent with our binding case law is impossible.

II.     Legal Financial Obligations

Finally, Key argues that interest was erroneously added to the legal financial obligations imposed at resentencing.  We accept the State's concession on this error.  RCW 10.82.090 clearly states "as of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations."  The only legal financial obligations imposed by the trial court were the $500 crime victim assessment and $100 DNA collection fee, therefore interest is improper.

Because of the errors identified herein, we vacate the sentence and remand for resentencing consistent with this opinion.


WE CONCUR:

_____        _____

_____        _____
Chun, J.                                           Leach, J.