IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57561-2-II |
| Respondent, | |
| v. | |
| NICHOLAS JONATHON McCOSHUM, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Nicholas J. McCoshum appeals his convictions for one count of second degree assault (assault with a deadly weapon) and one count of first degree unlawful possession of a firearm. McCoshum had previous criminal convictions, and at trial, evidence of three of these convictions was admitted.

McCoshum challenges his convictions with numerous arguments of ineffective assistance of counsel predominantly related to his counsel's failure to object to the evidence of his prior convictions, including his counsel's failure to challenge a previous conviction from Oregon on comparability grounds at sentencing.

In addition, McCoshum claims that the trial court erred in failing to give a unanimity instruction on the first degree unlawful possession of a firearm charge and by imposing a $500 crime victim penalty assessment (VPA). Finally, McCoshum raises several other claims in a statement of additional grounds (SAG).

We affirm McCoshum's convictions. However, we hold that McCoshum's counsel provided ineffective assistance of counsel by failing to challenge the comparability of the Oregon

conviction at sentencing. Accordingly, we reverse for resentencing. On remand, the trial court must also strike the VPA.

FACTS

I. BACKGROUND

One day in July 2021, McCoshum was fishing on the shores of the Columbia River. A boat, driven by Daniel Peshkov, caught McCoshum's fishing line in its engine. McCoshum's fishing rod was ripped from his hands and pulled into the water.

Peshkov noticed that McCoshum's fishing line was caught in the propeller but was unable to find the fishing rod. Peshkov then brought his boat back to the dock.

McCoshum watched the boat dock. He walked up to Peshkov and asked for either the return of his fishing rod or to be reimbursed for its $600 value. Peshkov apologized and said he did not see the fishing line in the water. However, Peshkov seemingly scoffed at McCoshum's request for reimbursement and asked him whether he could prove the rod was really worth $600. Peshkov then got in his truck and drove less than a half mile up a hill to drain the water from his boat.

McCoshum drove up to Peshkov with his truck, blocked him from leaving, and confronted him again. Peshkov could not hear what McCoshum was saying, so he walked over closer to McCoshum's truck. As Peshkov approached, McCoshum pointed a gun at his face.

McCoshum told Peshkov more than once that he really wanted to shoot him but said Peshkov was lucky because he was "sane" at that moment. Verbatim Rep. of Proc. (VRP) at 167. While pointing his gun, McCoshum demanded Peshkov give him his name and phone number.

Fearful of being shot, Peshkov gave his contact information, which McCoshum wrote down on a one dollar bill.

After McCoshum drove away with the contact information, McCoshum called Peshkov twice and left an inaudible voice mail.

Peshkov called 911. Shortly thereafter, law enforcement found McCoshum at a gas station and placed him under arrest. When asked about a firearm, McCoshum gave conflicting answers. He first told law enforcement that "there was no firearm" and that he "did not . . . have a firearm." VRP at 195, 197. But later, McCoshum claimed he "didn't assault anyone. *[His] gun wasn't even loaded*." VRP at 198 (emphasis added). McCoshum also admitted to law enforcement that he "wished to shoot" Peshkov. VRP at 197.

Law enforcement eventually searched McCoshum's truck. In a backpack, law enforcement found a handgun engraved with McCoshum's initials. The officers also discovered a canister of muzzle-loading propellant, a bottle of blue lubricant, ball ammunition, and percussion caps. Law enforcement did not test fire the gun, but it appeared functional and likely could be operated using the other components discovered in the backpack.

Following its investigation, the State charged McCoshum with one count of second degree assault (assault with a deadly weapon) and one count of first degree unlawful possession of a firearm.

II. PRETRIAL HEARINGS

More than a year later, the case proceeded to pretrial hearings. The trial court first asked the parties to address potential impeachment evidence under ER 609. The State disclosed its intention to introduce evidence of three prior convictions—two 2006 convictions for second

3

degree robbery and one 2016 Oregon conviction for attempted kidnapping—if McCoshum testified. McCoshum did not object to using these convictions for the purposes of impeachment.

Next, with respect to the unlawful possession of a firearm charge, McCoshum did not stipulate to the three prior convictions, each of which would satisfy the predicate serious offense element of the crime. As a result, the State said it would also introduce the same three previous convictions for this separate purpose.

The trial court then asked the State whether it believed that the specific convictions should be referenced as an element of the unlawful possession of a firearm charge. The State responded,

> That's how it's currently charged [in the information]. I think there's a possibility for sanitation, but as it's currently charged, and there hasn't been a request for sanitation, yes, Your Honor.

VRP at 16.

The trial court turned to defense counsel and asked whether they believed the prior convictions, which were specifically listed in the information, should be referenced to the jury, including in the trial court's initial comments to the jury. Specifically, the trial court asked:

> Let me be a little bit more direct with that, [defense counsel]. So based on the charging document is it your position that the State should be allowed to talk about the specific convictions as part of the elements of that particular charge, or that there should just be a reference to prior felony convictions that prohibit him from possessing a firearm?

VRP at 17. Defense counsel answered, "A reference to the specific convictions that prohibit him from possessing a firearm, the latter, Your Honor." VRP at 17.

The trial court pursued its question again, and the following exchange took place:

> The Court: . . . And are you comfortable with that?
> [Defense counsel]: Yes, Your Honor.
> The Court: Okay. Anything further about that, [from the State]?

4

> [The State]: Your Honor, that's an issue that can be raised by Defense. They're not raising it in this case. So it seems like . . . a tactical decision.

VRP at 17.

The trial court stated that it would follow up with McCoshum on this issue before the start of trial, saying,

> All right. If that changes . . . [defense counsel], make sure you let [the State] know that prior to Monday, and then we'll address that Monday before we get started with the jury. If it's not raised otherwise, I'll assume that that's the specific approach that the Defense wants to take is to have those specific charges and dates identified to the jury.

VRP at 17-18.

A few days later, the trial court held another pretrial hearing and addressed the State's motions in limine, including one in which the State requested to admit certified copies of McCoshum's judgments and sentences for his earlier convictions. McCoshum did not object. The trial court granted the motion and ruled that the certified copies of the judgments and sentences would be admitted (without including the portion listing McCoshum's criminal history). The face of the 2016 Oregon judgment and sentence for attempting kidnapping showed that the conviction was the result of a "no contest" plea. Ex. 7 at 2.

While discussing jury instructions, the trial court returned, yet again, to the issue of whether McCoshum's three prior convictions should be actually identified in the trial court's opening instructions to the jury. The trial court asked McCoshum whether he wished to explore the issue further, or if he

> remain[ed] comfortable with having those specific convictions identified in the initial instruction to the jury?

VRP at 62. McCoshum agreed to have the convictions identified, responding that he "remain[ed] comfortable" and that he had "no objections." VRP at 62.

III. TRIAL

Peshkov and two law enforcement officers testified consistently with the facts above. Peshkov also described the gun that McCoshum pointed at him was "like one of those guns you see in country movies, like the revolver." VRP at 167. Law enforcement described the gun found in McCoshum's truck as resembling a shortened down version of an "old musket style" that you might see in "a civil war reenactment or movie." VRP at 206.

McCoshum testified in his own defense. McCoshum admitted encountering Peshkov, asking him if he had his fishing rod, and asking to be reimbursed for the rod's value. McCoshum denied threatening Peshkov and denied pointing a firearm at him. He also denied later calling Peshkov on his phone. On cross examination, McCoshum admitted that he had three previous convictions—the two 2006 second degree robbery convictions and the 2016 attempted kidnapping conviction from Oregon.

Several items were admitted into evidence, including the handgun and dollar bill with Peshkov's contact information. Additionally, photographs were admitted into evidence, including photos of the gun, the backpack, muzzle-loading propellant, ball ammunition, percussion caps, and bottle of blue sealant lubricant. And consistent with the pretrial rulings, certified copies of McCoshum's prior judgments and sentences for the three previous convictions were admitted.

IV. JURY INSTRUCTIONS AND CLOSING ARGUMENTS

The trial proceeded to jury instructions. Regarding the three prior convictions, the jury was instructed about two different purposes for considering them. The jury was told that one

purpose was to consider this evidence only in deciding what weight or credibility to give to McCoshum's testimony. The jury was also told that another purpose was for the consideration of whether the predicate serious offense element of the unlawful possession of a firearm charge had been proved. The relevant instruction, instruction 7, mentioned both purposes and prohibited the jury from considering evidence of his prior convictions for any other purpose, stating:

> You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony and whether the [S]tate has established the second element of Count 2 – Unlawful Possession of a Firearm in the First Degree. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Clerk's Papers (CP) at 21. McCoshum did not object.

One of the to-convict jury instructions, instruction 13, described the elements of first degree unlawful possession of a firearm that the State needed to prove, including that McCoshum had previously been convicted of a serious offense. Two other jury instructions defined "Robbery in the Second Degree" and "Attempted Kidnapping in the Second Degree" as serious offenses. CP at 32-33. McCoshum did not object to these instructions.

The jury received a general unanimity instruction, but neither party requested, and the trial court did not give, a specific unanimity instruction related to the predicate serious offense for his firearm charge.

The case proceeded to closing arguments. With respect to the firearm charge, the State argued it had proved the predicate prior serious offense element because of the evidence of McCoshum's three prior convictions and his admission that he had been convicted of those crimes. The State did not otherwise discuss any details about the convictions. The State also did not

specifically ask the jury to focus on any one of the three convictions to decide whether a prior predicate serious offense had been proven.

Also during closing, the State referenced the phone calls that McCoshum made to Peshkov immediately after their confrontation.

V.  VERDICT, SENTENCING, AND APPEAL

The jury found McCoshum guilty of both counts.

Before sentencing, the parties stipulated to McCoshum's prior criminal history and the scoring of those prior convictions.  The parties' calculation of McCoshum's offender score included his 2016 Oregon attempted kidnapping conviction—counting it as two points for his assault conviction and one point for his unlawful possession of a firearm conviction.  At sentencing, the State contended that McCoshum's offender score was nine on the second degree assault conviction and six on the unlawful possession of a firearm conviction.  McCoshum did not contest this calculation.

With the agreed offender score calculation, the trial court sentenced McCoshum to 73.5 months (the middle of the standard sentencing range) on the second degree assault conviction, plus an additional 36-month firearm sentencing enhancement, for a total confinement of 109.5 months.  The trial court sentenced McCoshum to 66 months on the firearm conviction to run concurrently with the second degree assault conviction.  The exclusion of the 2016 Oregon conviction from McCoshum's offender score calculation would have resulted in different standard ranges for both counts.  RCW 9.94A.510 (Table 1 Sentencing Grid), .515 (Crimes Included Within Each Seriousness Level).  The trial court also found McCoshum indigent but imposed the $500 VPA.

8

McCoshum appeals.

ANALYSIS

McCoshum argues his counsel was ineffective during his trial based on several alleged deficiencies related to the evidence of his three prior convictions. His prior convictions were used for three different purposes, and his arguments target each different purpose.

First, with respect to the prior convictions' use as the predicate prior "serious offense" for his firearm count, McCoshum argues that his counsel failed to object under ER 403 when all three convictions were offered as evidence of a prior serious offense.

Second, with respect to the use of the prior convictions as impeachment evidence under ER 609, McCoshum argues that his counsel failed to object when none of the convictions were admissible under a proper application of that rule.[1]

And third, specifically with respect to his 2016 Oregon conviction, McCoshum argues that he received ineffective assistance of counsel when his counsel failed to challenge the comparability of this conviction to a Washington offense. He contends he was prejudiced when this Oregon conviction was used as a potential predicate serious offense for his firearm charge and when it was used for his offender score at sentencing.

Separately, McCoshum argues that the trial court erred when it failed to give a jury instruction on unanimity as to the predicate serious offense element of the unlawful possession of a firearm count because the jury could have used any of the three prior convictions for this element.

---

[1] Related to these first two ineffective assistance of counsel arguments, McCoshum assigns error to the trial court's jury instruction 7 regarding the consideration of McCoshum's prior convictions to assess his credibility and whether he unlawfully possessed a firearm.

He also challenges the imposition of the VPA on his judgment and sentence. Finally, McCoshum raises three claims in his SAG.

Each will be addressed in turn.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

To show ineffective assistance of counsel, the appellant must demonstrate that their counsel's performance was deficient and the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Generally, to show that trial counsel was deficient, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). We strongly presume that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To show prejudice—the second prong of the *Strickland* test—the appellant must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021).

When the appellant bases their ineffective assistance of counsel claim on the defense counsel's failure to object, "the defendant must show that the objection would likely have

succeeded." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019).

A. MCCOSHUM FAILS TO SHOW THAT COUNSEL'S FAILURE TO MAKE AN ER 403 OBJECTION CONSTITUTED INEFFECTIVE ASSISTANCE

McCoshum argues his counsel was ineffective for failing to object under ER 403 to the admission of evidence that McCoshum had been convicted of three prior serious offenses. McCoshum asserts that the evidence of three previous convictions, when one conviction would have been enough, was highly prejudicial and unnecessarily cumulative. We disagree.

ER 403 provides that even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

First degree unlawful possession of a firearm requires the State to prove, among other things, that the defendant had previously been convicted of a serious offense. RCW 9.41.040(1)(a).

McCoshum argues that the admission of his three prior convictions was overly prejudicial under ER 403 and contends that his counsel's failure to object on these grounds was ineffective assistance. According to McCoshum, there was no strategic or tactical reason for his counsel not to object to the three prior convictions because only one would have been sufficient to prove the charge. McCoshum further argues that if his counsel had objected to the admission of the prior convictions under ER 403 as needlessly cumulative and unfairly prejudicial, the trial court would have been likely to sustain the objection.

ER 403 does not necessarily prohibit the State from presenting cumulative evidence; rather it grants the trial court with discretion to exclude the "*needless* presentation of cumulative evidence." (Emphasis added.) If a defendant does not offer to stipulate to the fact of their prior conviction, the State is entitled to offer evidence of a predicate serious offense. *State v. Gladden*, 116 Wn. App. 561, 566, 66 P.3d 1095 (2003).

Here McCoshum did not offer to stipulate that he had been previously convicted of a serious offense. As a result, the evidence of McCoshum's prior convictions was not just highly probative of the serious offense element of his first degree unlawful possession of firearm charge, but the evidence was critical to the State's case. McCoshum cites no authority that the State is limited to proof of only a single prior serious offense when the fact of a predicate serious offense is both critical to the State's case and not stipulated to by the defense. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

But even if the trial court would have sustained an objection under ER 403 on the cumulativeness of the three prior convictions, McCoshum would still need to show a reasonable probability that the outcome of the proceeding would have been different. *See Johnson*, 12 Wn. App. 2d at 210. McCoshum cannot make this showing. The State's use of the convictions minimized their prejudicial effect. The State did not belabor McCoshum's prior convictions or provide unnecessary details. It argued in closing only that the jury would see the exhibits containing his prior convictions, that McCoshum admitted that he had been convicted of those crimes, and that each of those crimes are defined as serious offenses.

Such a bland mention of the convictions would be unlikely to affect the guilty verdicts when the evidence of guilt is strong, as it was in this case. For example, McCoshum made inculpatory statements to law enforcement that corroborated Peshkov's testimony. McCoshum initially denied he had a firearm, but later, McCoshum told law enforcement he "didn't assault anyone. *[His] gun wasn't even loaded*." VRP at 198 (emphasis added). In addition, despite denying having a gun, McCoshum was, in fact, in possession of a gun that matched Peshkov's rather unusual description.

Moreover, McCoshum's ER 403 argument can largely be seen as a concern about the jury misusing the convictions for propensity evidence. But, here, the trial court issued a limiting instruction on the use of the convictions. We presume the jury follows the trial court's instructions. *State v. Clark*, 187 Wn.2d 641, 654, 389 P.3d 462 (2017).

Thus, even if the trial court would have sustained an ER 403 objection, McCoshum cannot show prejudice to support his claim of ineffective assistance on this issue.

B. MCCOSHUM WAS NOT PREJUDICED BY HIS COUNSEL'S FAILURE TO OBJECT TO THE ADMISSION OF HIS PRIOR CONVICTIONS FOR IMPEACHMENT PURPOSES

With respect to the use of the prior convictions for impeachment purposes under ER 609, McCoshum argues that his counsel's failure to object to this use of his prior convictions was deficient performance, that the trial court would have likely sustained an objection, and that he was prejudiced. He contends that under the appropriate application of the rule, none of the convictions should have been used for impeachment. And, given that McCoshum and Peshkov told completely different stories, improper impeachment of McCoshum's credibility was especially prejudicial.

The State concedes that McCoshum's 2016 Oregon conviction should not have been admitted for impeachment purposes under ER 609, but argues that McCoshum's two 2006 second degree robbery convictions were admissible under the rule. But even if the 2006 convictions were wrongfully admitted under ER 609 (and even with the conceded wrongful admission of the 2016 Oregon conviction), the State argues that McCoshum cannot show prejudice. We agree that McCoshum cannot show prejudice.

1. Legal Principles

ER 609(a)(1) states that evidence of a witness's prior felony conviction may be admitted for the purpose of attacking the witness's credibility only if "the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered." Under ER 609(a)(2), a prior conviction may be admitted without an analysis of probative value and prejudice if the crime "involved dishonesty or [a] false statement." And under ER 609(b), evidence of a prior conviction is not admissible to impeach the defendant if the conviction is more than 10 years old unless "the probative value of the conviction . . . substantially outweighs its prejudicial effect."

2. Application

McCoshum argues that his counsel was ineffective for failing to object to the admission of his prior convictions for the purposes of ER 609. McCoshum claims that his counsel's failure to object prejudiced him because the State's case on the assault charge hinged on the relative credibility of McCoshum and Peshkov.[2] McCoshum contends that because he flatly denied

---

[2] McCoshum does not argue that his counsel's failure to object to his prior convictions under ER 609 prejudiced his unlawful possession of a firearm conviction.

14

threatening Peshkov or pulling his gun, the trial court's instruction to the jury that it could consider his three prior convictions for the purpose of assessing his credibility likely caused the jury to convict him.

Assuming without deciding that McCoshum's counsel was deficient for failing to object to the admission of his three previous convictions for the purposes of impeachment, McCoshum's argument fails because he cannot show prejudice under the second prong of the *Strickland* test. *See Johnson*, 12 Wn. App. 2d at 210, 213.

McCoshum's inability to establish prejudice is rooted in the strength of the evidence of guilt. As discussed above, McCoshum made very damaging inculpatory statements and Peshkov's unusual description of the gun matched the firearm found in McCoshum's possession.

Thus, although it is true that the relative credibility of McCoshum and Peshkov was important to the jury's consideration, there is no reasonable probability that the outcome of the proceeding would have been different even if McCoshum's prior convictions had not been admitted for the purpose of impeachment.[3] Accordingly, this ineffective assistance of counsel claim fails.

---

[3] As discussed above, the risk of prejudice to McCoshum from the jury considering the convictions as propensity evidence was reduced by the trial court's limiting instruction. The trial court instructed the jury that it could only use McCoshum's prior convictions for the unlawful possession of a firearm charge and for credibility. We presume the jury follows the trial court's instructions. *Clark*, 187 Wn.2d at 654.

15

C. MCCOSHUM RECEIVED INEFFECTIVE ASSISTANCE BASED ON HIS COUNSEL'S FAILURE TO OBJECT TO THE USE OF HIS OREGON CONVICTION IN HIS OFFENDER SCORE

McCoshum's final argument about his prior convictions focuses exclusively on his 2016 Oregon conviction for attempting kidnapping. McCoshum argues that his Oregon attempted kidnapping conviction is not legally or factually comparable to a Washington offense. He argues that he received ineffective assistance of counsel when his counsel failed to object to the comparability of this Oregon conviction twice—first, when it was used as a potential predicate serious offense for his firearm charge and, second, when it was used for his offender score at sentencing.

We reverse with respect to the use of the Oregon conviction for McCoshum's offender score and remand for resentencing, during which the trial court should conduct a factual comparability analysis of this conviction.

1. Legal Principles

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the trial court uses the defendant's prior convictions to determine an offender score, which (along with the seriousness level of the current offense) establishes the defendant's presumptive standard sentencing range. *State v. Arndt*, 179 Wn. App. 373, 377, 320 P.3d 104 (2014). Where the defendant's offenses resulted from out-of-state convictions, the trial court must make a factual determination of whether the out-of-state conviction is comparable to a Washington conviction. *Id.* at 378.

We apply a two-part test to determine whether an out-of-state offense is comparable to a Washington offense. *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). First, we determine if the offenses are *legally comparable* by comparing their elements. *Id.* Legal

16

comparability exists when the out-of-state offense is the same or narrower than the Washington offense. *State v. Olsen*, 180 Wn.2d 468, 472-73, 325 P.3d 187 (2014). Second, if the offenses are not legally comparable, we determine whether the offenses are *factually comparable* by deciding if "the defendant's conduct would have violated a Washington statute." *Canha*, 189 Wn.2d at 367. In assessing factual comparability, we can consider only those facts in the out-of-state proceeding that were proven to a trier of fact beyond a reasonable doubt or to which the defendant admitted or stipulated. *Id.* The State has the burden to prove the existence and comparability of all out-of-state convictions. *Olsen*, 180 Wn.2d at 472.

If an out-of-state conviction involves an offense that is neither legally nor factually comparable to a Washington offense, the sentencing court may not include the conviction in the defendant's offender score. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

2. Application

McCoshum argues his 2016 Oregon conviction is neither legally nor factually comparable. He argues it is not legally comparable to a Washington offense because Oregon's attempt statute is broader than Washington's statute. He argues it is not factually comparable because his Oregon judgment contains no information about the underlying facts from that conviction.

Based on his Oregon conviction's lack of comparability to a Washington offense, McCoshum contends that if his counsel had objected and raised the issue of comparability, the conviction would have been excluded from its potential consideration as a predicate serious offense for his firearm count and from its use in his offender score. Having a non-comparable conviction used these ways, according to McCoshum, resulted in prejudice.

The State appears to concede that McCoshum's Oregon conviction is not *legally* comparable. The State agrees that Oregon's definition of *attempt* is not legally comparable to Washington's definition. However, the State argues that because an Oregon conviction can be *factually* comparable to the similar Washington crime and nothing in the record suggests that McCoshum's Oregon conviction was not factually comparable, McCoshum fails to overcome the strong presumption that his trial counsel performed reasonably in stipulating to the comparability of the 2016 Oregon conviction.

As conceded by the State, McCoshum's argument that "attempt" is defined more broadly in Oregon than in Washington is persuasive. Br. of Appellant at 33. Under Oregon Revised Statutes Section 161.405(1), "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." In contrast, under RCW 9A.28.020(1), "A person is guilty of an attempt to commit a crime if, *with intent to commit a specific crime,* he or she does any act which is a substantial step toward the commission of that crime." (Emphasis added.) The Oregon definition of attempt merely requires *general* intent to engage in conduct constituting a substantial step towards commission of a crime, whereas the Washington definition requires *specific intent*. *Arndt*, 179 Wn. App. at 382. Thus, we agree with McCoshum that the crime of attempted kidnapping in Oregon is not legally comparable to a Washington offense.

The next step is to assess whether McCoshum's Oregon attempted kidnapping conviction is factually comparable. *Canha*, 189 Wn.2d at 367. McCoshum argues that factual comparability cannot be established because a no contest plea is a plea in which the defendant does not admit commission of the criminal act. McCoshum contends that the limited record from this type of plea

contains no indication that he possessed the mental state necessary to meet the elements of the Washington attempt statute. McCoshum says that it is "beyond unlikely" that factual comparability could be demonstrated because McCoshum did not admit to any specific facts in his plea and neither side would have had any motivation to stipulate to such facts. Reply Br. of Appellant at 7. McCoshum contends that there "is virtually no possibility" that further litigation would uncover any admission or stipulation on the specific facts necessary to bring McCoshum's conduct within the scope of the narrower Washington statute and establish factual comparability. Reply Br. of Appellant at 6.

The State disagrees and suggests that if the failure to object on comparability grounds was deficient performance, the matter should be remanded back to the trial court to permit the State to attempt to provide the appropriate documents that establish factual comparability.

Here, the record contains very little information about the factual comparability of the Oregon conviction. We only have a portion of McCoshum's Oregon judgment in our record (only three out of four pages included), and no other supporting documents such as the indictment or plea statement. From these few documents, it is unknown from the record whether factual comparability can or cannot be established. Thus, when faced with a factual record that failed to establish the comparability of the Oregon conviction, when comparability was relevant, it was deficient performance for defense counsel to not challenge the Oregon conviction—meeting the first prong of the *Strickland* test.

Generally, when it is unknown whether factual comparability can be established, the appropriate remedy is to remand to the trial court where the State has the opportunity to satisfy its

burden of proving factual comparability.[4] *Thiefault*, 160 Wn.2d at 417 n.4 ("[W]here the issue has not been . . . argued before the trial court and the defendant does not object to the evidence, the State retains an opportunity to prove the classification of an offense upon remand."). But because McCoshum raises this issue in the context of an ineffective assistance of counsel claim, before we can determine whether remand is required, we must determine whether McCoshum can meet the second prong of the *Strickland* test by showing prejudice based on his counsel's failure to challenge the comparability of the Oregon conviction for each of his two arguments.

First, with respect to the Oregon conviction's use as a predicate serious offense for his firearm charge, we see no prejudice. As noted above, the overall evidence of guilt against McCoshum was very strong. And if his counsel had objected to this use of the Oregon conviction, McCoshum cannot demonstrate a reasonable probability that the outcome of the proceeding would have been different because McCoshum conceded the existence of the two robbery convictions that also served as predicate serious offenses. Thus, we conclude he has not shown ineffective assistance of counsel on this basis.

But related to sentencing, McCoshum's argument for prejudice based on his offender score is persuasive. The inclusion of the Oregon conviction in McCoshum's offender score clearly affected his standard sentencing ranges. RCW 9.94A.510, .515. Accordingly, not only was it deficient performance for defense counsel to fail to challenge the use of the conviction, the failure

---

[4] McCoshum cites no published case that prevents the State from establishing factual comparability on remand where the underlying prior conviction was based on a no contest plea. *DeHeer*, 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

to do so prejudiced McCoshum—meeting both prongs of the *Strickland* test and, thereby, establishing ineffective assistance of counsel.

Thus, we reverse and remand for resentencing. But at resentencing, just as if defense counsel had raised this issue initially, the State may provide additional evidence to establish the factual comparability of the 2016 Oregon conviction. *Thiefault*, 160 Wn.2d at 417 n.4.

## II. JURY UNANIMITY

McCoshum next argues that the trial court erred in failing to give the jury a unanimity instruction related to the predicate serious offenses that the State offered for his firearm count. We disagree.

## A. LEGAL PRINCIPLES

For a conviction to be constitutionally valid, a unanimous jury must conclude that the accused committed the criminal act charged. *State v. Beasley*, 126 Wn. App. 670, 682, 109 P.3d 849, *review denied*, 155 Wn.2d 1020 (2005). When multiple acts are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on which act constitutes the crime. *Id.* In a "multiple acts" case, unless the State elects which incident it will rely on for the conviction, a trial court must instruct the jury that all jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Id.* But neither election nor a unanimity instruction is required if the evidence indicates a continuing course of conduct. *State v. Christian*, 18 Wn. App. 2d 185, 208, 489 P.3d 657, *review denied*, 198 Wn.2d 1024 (2021). We review de novo whether a unanimity instruction is required. *State v. Lee*, 12 Wn. App. 2d 378, 393, 460 P.3d 701, *review denied*, 195 Wn.2d 1032 (2020).

B. APPLICATION

McCoshum argues a unanimity instruction was required here because (1) the jury was provided with "multiple acts" (the evidence of three different convictions) for the predicate serious offense element of the firearm charge and (2) the State did not make an election on which conviction it wanted the jury to rely. McCoshum contends that without an instruction, the jurors may not have been unanimous on which prior offense they found was proven.

The State responds that this is not a multiple acts case. According to the State, in "multiple acts" cases, several acts are alleged, any of which could constitute the crime charged. But the State suggests that the crime of unlawful possession of a firearm is a "continuing course of conduct" crime and the predicate serious offense requirement creates the status which criminalizes the act of possession, not a separate "act" for which there needs to be a specific unanimity instruction. And here, there was but only one act, McCoshum's possession of a firearm.

McCoshum has no persuasive response to the State's argument. The relevant "act" for the crime of first degree unlawful possession of a firearm is a singular continuing act—the possession of the firearm. *See* RCW 9.41.040(1)(a).[5] It is true that the fact of a predicate serious offense

---

[5] The relevant subsection of the statute provides in full:

> A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.

RCW 9.41.040(1)(a). Former RCW 9.41.040(1)(a) (2020) was in effect at the time McCoshum committed the offense. However, because the changes to the statute are not material to our analysis, we refer to the current version of the statute.

creates the status after which possession of a firearm is a crime, but there are not multiple "acts" that could constitute multiple potential crimes; there is but one continuing act of possessing a firearm. And for this charged crime, as well as for the other charge, the jury received a general unanimity instruction. In any event, beyond generally outlining the law regarding unanimity and multiple acts, McCoshum offers no authorities that impose a specific unanimity instruction in this context. *DeHeer,* 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Therefore, McCoshum has failed to establish he was entitled to a specific unanimity instruction for his firearm charge.

III. VPA

McCoshum argues we should remand to strike the $500 VPA because a recent change to the law allows trial courts to retroactively waive VPA impositions. The State agrees that the VPA should be stricken.

Until recently, a $500 VPA under former RCW 7.68.035 (2018) was imposed on all persons who committed a crime. But in the 2023 session, the legislature changed the law to prohibit the imposition of the VPA on indigent defendants. Laws of 2023, ch. 449, § 1; RCW 7.68.035(4). The current version of the statute also allows trial courts to waive any VPA imposed prior to the effective date of the amendment. Laws of 2023, ch. 449, § 1; RCW 7.68.035(5). This change took effect on July 1, 2023. Laws of 2023, ch. 449, § 27.

This change applies to McCoshum because the trial court found him indigent and his case is still on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, we remand for the trial court to strike the VPA from McCoshum's judgment and sentence.

## IV. SAG CLAIMS

McCoshum asserts three claims in his SAG. First, he appears to claim that there was insufficient evidence to support his convictions, asserting that his firearm conviction should be reversed because his firearm does not meet the federal definition of a firearm. He asserts the firearm is an antique collectors' item and not a "modern firearm" under federal law. We disagree that there was insufficient evidence.

Evidence is sufficient to support a guilty verdict if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, he admits the truth of the State's evidence, and all reasonable inferences drawn from that evidence are to be construed in favor of the State. *Id.* at 265-66.

Under the unlawful possession of a firearm statute, a "firearm" is defined as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(20).[6] McCoshum fails to show how federal law is relevant to this state crime. And the State's evidence was sufficient to establish that the gun found in McCoshum's backpack met

---

[6] Former RCW 9.41.010(11) (2020) was in effect at the time McCoshum committed the offense. However, we cite to the current version of the statute because the changes to this subsection do not materially affect our analysis.

the definition of a firearm under the state statute. *State v. Gouley*, 19 Wn. App. 2d 185, 195-96, 494 P.3d 458 (2021) (holding that evidence was sufficient to establish device was a "gun in fact," thus meeting the definition of a firearm where it was described as a gun that could be made operable with certain components and noting that inoperability of gun is not controlling), *review denied*, 198 Wn.2d 1041 (2022). Accordingly, this claim fails.

Second, McCoshum appears to claim that the State committed prosecutorial misconduct by providing false evidence and made false and misleading statements in closing arguments about an alleged phone conversation that McCoshum had with Peshkov. We disagree.

Contrary to McCoshum's claim, there was evidence at trial that McCoshum called Peshkov. Peshkov testified McCoshum called him twice after the incident and left him a voicemail. In closing argument, the prosecutor, drawing from Peshkov's testimony, argued that McCoshum made the calls and left messages. The State's closing argument was a reasonable inference from Peshkov's testimony. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011) (prosecutors have wide latitude to argue reasonable inferences from the evidence in closing argument).

As part of his claim, McCoshum asserts that his phone records would prove that the calls never took place. However, the phone records to which McCoshum refers are not in our record on appeal. Because McCoshum's claim relies on evidence outside the record on review, we cannot consider it. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (the court "cannot

review" claims that rely on evidence outside the appellate record).[7]  McCoshum's prosecutorial misconduct SAG claim fails.

McCoshum's third SAG claim states that he suffers from multiple mental health conditions and has not been offered a mental health assessment or "mental health court." SAG at 1.  It is unclear from McCoshum's SAG whether he is claiming that the trial court should have ordered an evaluation of his competency before trial under RCW 10.77.060(1)(a) or whether he is claiming some sort of an error during his sentencing.  We have nothing in our record regarding a competency determination under RCW 10.77.060(1)(a) and, therefore, cannot further consider it.  *Alvarado*, 164 Wn.2d at 569 (the court "cannot review" claims that rely on evidence outside the appellate record).  If McCoshum relates this claim to an error at sentencing, we are not sufficiently informed of the nature and occurrence of his claimed error.  RAP 10.10(c); *see also State v. Bluehorse*, 159 Wn. App. 410, 436, 248 P.3d 537 (2011) (explaining we do not discuss SAG claims that fail to inform us of the nature and occurrence of the alleged error).

## CONCLUSION

We affirm McCoshum's convictions.  However, we hold that McCoshum's counsel provided ineffective assistance of counsel by failing to challenge the comparability of the Oregon conviction with respect to its use in McCoshum's offender score.  Accordingly, we reverse for resentencing.  On remand, the trial court must also strike the VPA.

---

[7] And to the extent that McCoshum is claiming that Peshkov's testimony was false, we do not address issues of witness credibility on appeal and instead defer to the jury's measure of witness credibility and resolution of conflicting testimony. *Thorgerson*, 172 Wn.2d at 443.  Whether a witness testifies truthfully is an issue "within the province of the trier of fact." *Id*.

No. 57561-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

CHE, J.